## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THERON CARR** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-1794** |
| **MURPHY OIL USA, INC.** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Murphy Oil USA, Inc.'s motion for summary judgment on the plaintiff's claim of racial discrimination under Title VII of the Civil Rights Act is **GRANTED**.  (Document # 30.)

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** *sua sponte* on the claim of racial discrimination under Louisiana law.

### I. BACKGROUND

Murphy Oil USA, Inc. (Murphy) hired Theron Carr as an "F" Operator Shift Breaker trainee on November 1, 2004, and assigned him to the Manufacturing Department in the Operations Section of the Meraux Refinery at Meraux, Louisiana.  Carr was classified as a probationary employee while he attended classroom instruction and on-the-job training.  Carr was assigned to the Platformer Unit along with another trainee, Brian Gonzalez, Jr. in December 2004.  He was terminated from his employment on January 18, 2005, because:  "New employee

was on probationary status and did not grasp knowledge of job [of platformer operator] in required time."

Carr filed a complaint against Murphy alleging discrimination based on race, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq.,* and Louisiana law.  Murphy filed a motion for summary judgment.

## II. DISCUSSION

### A.  Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B.  Title VII claim of discrimination in employment

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973), the Supreme Court "established an allocation of the

burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2746 (1993).  "First, the plaintiff must establish a *prima facie* case of discrimination."  See  Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000) (citing Texas Dep't of Community Affairs v. Burdine, 101 S.Ct. 1089 (1981)).  "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee."  Burdine, 101 S.Ct. at 1094.  If the burden is satisfied, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason.  See Reeves, 120 S.Ct. at 2106.  If the defendant meets that burden of production, the presumption disappears.  Id.

The Supreme Court reiterated that the ultimate burden of showing intentional discrimination remains with the plaintiff.  Id. at 2106.  The plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id. (internal quotation and citation omitted).  The evidence that established the plaintiff's *prima facie* case and any inference drawn therefrom should still be considered.  Id.  However, proof that the employer's reason is contrived does not establish that the plaintiff's reason is correct.  Id. at 2108.  "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. at 2109.  Whether judgment as a matter of law is appropriate depends on factors which include "the

strength of the plaintiff's *prima facie case*, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may be considered." Id. If the plaintiff establishes a *prima facie* case and produces sufficient evidence to reject the employer's explanation, the plaintiff need not "always introduce additional, independent evidence of discrimination." Id.

### 1. *Prima facie* case of racial discrimination

"In order to establish a *prima facie* case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated [of a different race]." Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005); Jones v. Overnite Transp. Co., 212 Fed. Appx. 268, 272-73 (5th Cir. 2006).

Murphy acknowledges that Carr can satisfy the first and third elements of a *prima facie* case because he is African-American, and his employment was terminated. Murphy argues that Carr can make no showing that he was qualified for the position he held at the time of his termination or that a similarly situated employee was treated differently.

### 2. Qualified for the position held

Murphy provides the following information concerning Carr's employment history and the basis for the termination. Carl Zornes, the Human Resources Manager of Murphy, testified that he was one of the people who interviewed and hired Carr. Zornes knew Carr's father, who had worked for Murphy, and had a favorable impression of Carr "just by knowing his father."

4

In an affidavit, Zornes described the training program provided for new employees, consisting of classroom instruction and on-the-job training. The period of on-the-job training depends on the progress of the trainee, but generally lasts for five weeks, during which trainees are given written tests and walkthrough tests. New hires are classified as probationary employees for one year from the date of hire.

As a platformer operator, Carr was provided with study materials for three areas: the Hydrobon Unit, the Platformer Unit, and the Regenerator Unit. Zornes stated that a platformer operator is first trained and tested on the Hydrobon Unit, and moves to the other units after he demonstrates a satisfactory grasp of the Hydrobon Unit. Zornes informed that a minimum passing score of 80% is required for each test.

Carr took his first hydrobon written test on December 23, 2004 and scored 76%. He was retested on December 30, 2004 and scored 80%. On January 4, 2005 Carr took the platformer written test and scored 32%. On January 6, 2005 Carr took the field walkthrough test and scored 69%.[1] On January 13, 2005, he repeated the walkthrough test and scored 62%.

Mark Binder, Carr's supervisor, reviewed the scores and reached the following conclusion:

> Theron is not making any forward progress and in fact rather is progressing negatively. He has much difficulty retaining what he has learned or reviewed. In his 4 weeks of training, he has taken all of the Hydrobon Tests twice and has not been able to pass with the minimum required 80%. The testing thus far does not include any emergency procedures. Base on testing results and observations, I do

---

[1]    Carr states that he did not complete the test because he noticed a hydrogen leak in the Hydrobon Unit that had to be addressed. There is no evidence of a shutdown on the unit because of a leak on January 6th.

not believe that Theron has the ability to qualify on the Platformer Operator Job
nor another process unit.

Gregory Neve, the plant manager made the decision to terminate Carr, based on the
reports of Charles Schaub, the East Plant Superintendent, and supervisors involved in Carr's
training. Schaub first told Neve informally that Carr was having difficulty with his training and
had failed one written test. Richard Lipari, Binder's supervisor, subsequently informed Neve
that Carr was struggling and was not progressing in the program as anticipated.

Carr contends that Murphy was unfair and argues that he has never had difficulty with
technical training, except at Murphy Oil, and that he will graduate from the Universal Technical
Institute in Houston in February 2008 with a 3.2/4.0 grade point average. The only evidence
presented in support of his argument is his own declaration.

After a careful review of the memoranda, depositions, and documentary evidence, the
court concludes that Carr has failed to present evidence to meet his initial burden of establishing
the second element of a *prima facie* case of discrimination based on race, *i.e.* that he was
qualified for the position. Murphy's documentary and testimonial evidence establishes that Carr
had difficulty with the written tests and the walkthrough tests. During the probationary period,
Carr achieved the 80% minimum score on only one of the five tests administered for the
platformer operator job. Based on the written tests, the supervisors' observations  during the
walkthrough tests, and their evaluation of his progress, Murphy management decided that the
probationary employee was did not have a grasp of the knowledge necessary to perform the job.

**C.  Discrimination under Louisiana law**

6

Murphy does not address Carr's claims of discrimination under state law.  Because the standards governing both claims are materially indistinguishable, Carr has not established a *prima facie* case of discrimination under Louisiana, and summary judgment is granted as to those claims.  See Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413 (5th Cir. 2006); LaDay v. Catalyst Technology, Inc., 302 F.3d 474, 477 (5th Cir. 2002).

### III.  CONCLUSION

Accordingly, Carr has not presented evidence that he is qualified for the position; therefore, he has not met his initial burden of establishing a *prima facie* case of discrimination based on race.  There are no disputed issues of material fact, and Murphy's motion for summary judgment on the Title VII claim is granted.  Further, summary judgment is proper on Carr's claims of discrimination under Louisiana law.

New Orleans, Louisiana, this   26th day of July, 2007.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**